```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES of AMERICA,

          -against-                          11 Cr. 626(CS)

LEONARD BAMBERG,

                 Defendant.

------------------------------------x

                                    United States Courthouse
                                    White Plains, New York

                                    July 24, 2012


B e f o r e:

                    HON. CATHY SEIBEL,
                              District Court Judge

A P P E A R A N C E S:

ANDREW BAUER
          Assistant United States Attorney



KAFAHNI NKRUMAH
          Attorney for Leonard Bamberg










ANGELA A. O'DONNELL, RPR
Official Court Reporter

              Angela O'Donnell, RPR, 914-390-4025
```

```
 1                       P R O C E E D I N G S
 2              THE CLERK:  United States against Leonard Bamberg.
 3              THE COURT:  Good afternoon, Mr. Bauer, Mr. Nkrumah,
 4   Mr. Bamberg.
 5              MR. BAUER:  Good afternoon.
 6              MR. NKRUMAH:  Good afternoon, your Honor.
 7              THE DEFENDANT:  Good afternoon.
 8              THE COURT:  First let me put on the record what I've
 9   received in connection with the sentencing and make sure I have
10   everything I should have.  I have the presentence report, which
11   is dated June 11th; I have defendant's sentencing memorandum,
12   which was filed July 16.
13              Is there anything else I should have received?
14              MR. BAUER:  Not from the government, Judge.
15              MR. NKRUMAH:  Not from the defendant, your Honor.
16              THE COURT:  All right.
17              Mr. Bamberg, have you the received a copy of the
18   presentence report and the addendum?
19              THE DEFENDANT:  Yes, your Honor.
20              THE COURT:  Have you read it?
21              THE DEFENDANT:  Yes, your Honor.
22              THE COURT:  Have you discussed it with your lawyer?
23              THE DEFENDANT:  Yes, your Honor.
24              THE COURT:  Mr. Nkrumah, you've read the presentence
25   report and discussed it with your client?
```

```
 1                THE DEFENDANT:  Yes, your Honor.
 2                THE COURT:  Do you have any objections to the factual
 3     recitation in the presentence report?
 4                MR. NKRUMAH:  No objection, your Honor.
 5                THE COURT:  All right.  Does the government have any
 6     objections to the factual recitation in the presentence report?
 7                MR. NKRUMAH:  No, your Honor, that is incorrect.
 8     There was an objection filed by the defendant.  I think the
 9     government pointed out the same objection on, I believe it's on
10     page four, paragraph ten.  It's just a correction as to who
11     Mr. Bamberg took the plea in front of.  That should be he pled
12     guilty in front of you, your Honor.
13                THE COURT:  Yes.  My version says that.
14                MR. NKRUMAH:  Oh, okay.
15                MR. BAUER:  Judge, I think when Mr. Chance was
16     sentenced we noticed the typo, they changed it in this one, but
17     I didn't change it in Mr. Chance's.
18                THE COURT:  Okay.  It was probably incorrect in the
19     first disclosure but they corrected it the second time around.
20                MR. BAUER:  Exactly.  I think it said Judge
21     Hellerstein originally.
22                MR. NKRUMAH:  Yes, it did, your Honor.
23                THE COURT:  Yes.  Unclear how that crept in.  But
24     it's been corrected.  Then the findings of fact in the
25     presentence report are my findings of fact.
```

1            Does the government wish to be heard?

2            MR. BAUER:  Yes, Judge.  Leonard Bamberg became
3    involved in what I call the Yonkers gang initiative the last
4    couple of years because he had made controlled buys or
5    controlled sales to a cooperating witness in Yonkers.  He was
6    not I'll say the primary target of the investigation.  That
7    investigation, as you know, focused on the Elm Street Wolves
8    and the Cliff Street Gangsters but cooperating witness learned
9    that Mr. Bamberg had crack for sale and you don't turn it down
10   when you're out on the street, so, the buys were made into
11   Mr. Bamberg and that was the basis for his arrest.

12           The other basis for his arrest, Judge, was the
13   testimony of cooperating witnesses and multiple cooperating
14   witnesses were prepared to testify at his trial that
15   Mr. Bamberg has been selling crack cocaine on the streets of
16   Yonkers for many years working alongside at least Mr. Chance
17   and then he hails from a different area of Yonkers, Jackson
18   Avenue in Yonkers, where there is another gang and a gang that
19   the government, both federal and state, continue to investigate
20   because there is much violence that stems from the
21   Jackson/Lawrence area of Yonkers, especially with their beef or
22   ongoing rivalry with gang members on Riverdale Avenue in
23   Yonkers.

24           And cooperating witnesses would have said that he,
25   Mr. Bamberg, hailed from that area and had been selling crack

1   from that area for many years.
2           Looking at his criminal history, Judge, he clearly
3   has a violent the background just based on his prior arrests,
4   although this case admittedly, I think by my count the only
5   witness who would said anything about violence would have said
6   that I think Mr. Bamberg shot a gun in the air and I think
7   that's been captured on a Smack DVD but that's the only gun.
8           THE COURT:  A who DVD?
9           MR. BAUER:  A Smack, S-M-A-C-K.
10          THE COURT:  What does that mean?
11          MR. BAUER:  I think it refers to a like a
12  distribution company but it's really it's street-level DVDs.  A
13  fair amount of my Yonkers defendants can be seen on Smack DVDs
14  talking about drugs and violence, and Mr. Bamberg, I have not
15  seen it, I think my agents have, was captured shooting a gun in
16  the air.  And I, of course, if there were a trial, we would
17  have dug that DVD up and probably looked to admit it.
18  Nevertheless, as I said, that's the only proof of violence that
19  we would have had in this case.
20          All that comes together, Judge, for our normal,
21  typical stance here at sentencing which is a guideline sentence
22  is appropriate.
23          THE COURT:  Thank you, Mr. Bauer.
24          Mr. Nkrumah.
25          MR. NKRUMAH:  Thank you, your Honor.  You've had an

1  opportunity, I know, to review the pleadings, the presentencing
2  memorandum that I filed on behalf of Mr. Bamberg.  I would like
3  to just comment briefly, your Honor, again, very briefly on
4  Mr. Bamberg's life.
5              Sitting before you, your Honor, is a young man who's
6  had a very troubled life, and being born into a very
7  disfunctional family, getting placed in foster care at a young
8  age, spending a few years in foster care away from his family,
9  little contact with his mother because of her addiction, taken
10 out of foster care by an abusive father who continued that
11 abuse once Mr. Bamberg was taken out of foster care, and in
12 continuing that abuse, Mr. Bamberg's father purposely kept
13 Mr. Bamberg away from his mother and his mother's side of the
14 family.  The result of that, his mother passing without
15 Mr. Bamberg ever seeing her again, and the last time he saw her
16 was when he went into foster care.
17             Mr. Bamberg lived with his father until he could no
18 longer.  Mr. Bamberg had left the home on a number of different
19 occasions to come back at 16.  Mr. Bamberg finally decided to
20 leave the home.  He started living with friends and anyone who
21 would take him in for however long a period, and as this
22 familiar story goes in the communities in which Mr. Bamberg
23 hails from, he started trying to survive by hanging with the
24 wrong group of people.
25             Mr. Bamberg knows this history well and he wants this

1  Court to understand that this arrest has -- and the time that
2  he's facing for this arrest has -- he has begun, your Honor, to
3  start to see different objectives, different avenues.
4  　　　　　One of the first things I did when I first met
5  Mr. Bamberg, your Honor, was to talk with him extensively, and
6  we've had extensive conversations about his life after this
7  case knowing full well that -- Mr. Bamberg understanding full
8  well that he was going, he would probably be sentenced to time
9  for his actions.  Always, your Honor, always taking
10 responsibility his actions.  At no time in my conversations
11 with Mr. Bamberg did he not take responsibility for his
12 actions.
13 　　　　　Mr. Bamberg, we've had many discussions, especially
14 about his changing his behavior and one of the ways in which
15 Mr. Bamberg has shown, especially people at Westchester County
16 Jail that he changed in his ways is that he no longer is the
17 type of inmate that he was at Westchester when he was 20, 21,
18 always getting into fights, disrespectful to staff.
19 　　　　　When I went to go see Mr. Bamberg this Saturday, your
20 Honor, one of the correction officers heard me say his name and
21 asked, oh, you're Leonard Bamberg's attorney?  And I answered
22 him in the affirmative.  And I said, why, is my client in
23 trouble?  And he was like, no, actually, Mr. Bamberg has been a
24 very good inmate, very different from when he came in here
25 before.  And that's one of the first things he told me when he

1  saw me on Saturday that he's learning how to control that
2  temper, and he's learning how to become a better person.
3           One thing that he told me, your Honor, that I do
4  believe, is that he doesn't want to do this again.  That he
5  doesn't have another bid in him.
6           Mr. Bamberg sits before you, your Honor, at 27 years
7  old understanding that, if the Court is lenient with him and
8  sentences him to the mandatory minimum based on the law that's
9  the lowest term that the Court could sentence him to, even
10 though we both, myself and Mr. Bamberg, believe that this Court
11 could find reason to go below that if it was possible, but he
12 truly understands that it's not possible, and that ten years is
13 the lowest that this Court can sentence him to.
14          Mr. Bamberg understands that he'll be in his mid- 30s
15 when he gets out again, and opportunities mid-to-late -- mid
16 30s when he gets out again, even mid-to-late 30s, and
17 Mr. Bamberg understands that his opportunities at trying to
18 turn his life around are going to be slim after he's released.
19          One of the things that I just finished speaking to
20 Mr. Bamberg about that I find as a positive is that he has
21 reconnected with his mother's family.  They correspond.  I've
22 spoken to one of the uncles on a couple of occasions.  I know
23 that they visited him, I know that they write him, and I've
24 told him and I've asked him to continue that relationship, told
25 him to give it the time, it needs to heal and to hopefully

1    garner a relationship with his mother's family, something that
2    he was denied as a child.
3        Your Honor, with all that said, I also have spoken in
4    the sentencing memorandum about how I feel even with the
5    reduction that Congress has given on the sentencing on the
6    crack-to-cocaine ratio, it's still unfair, and it still
7    produces sentences that are unfair.
8        It's my opinion, your Honor, that crack is no
9    different than cocaine.  It's been shown that crack is no
10   different than cocaine by scientific evaluation, it's in
11   numerous, numerous periodicals that the reason why the
12   crack-cocaine ratio was what it was when it was one hundred to
13   one in my opinion, your Honor, it's still the same reason at
14   twenty eight to one.  It should be one to one.  It produces
15   unfair sentences like this.
16       I do believe, your Honor, based on the law, and
17   Mr. Bamberg understands that ten years is the minimum that this
18   Court can give and this is what we ask this Court to give
19   Mr. Bamberg, the mandatory minimum of ten years.
20       We believe, your Honor, that's enough time for
21   Mr. Bamberg to get the vocation and training in the Bureau of
22   Prisons that he needs to come out and be successful.
23       He's already started trying, your Honor.  One of the
24   things we spoke about and one of the things Mr. Bamberg has
25   been doing while in Valhalla is studying for his GED.

10

1    I don't know, but I have faith in Mr. Bamberg that
2  he's going to go to the BOP and continue to try to improve
3  himself.  I don't think this was just for this Court and for
4  sentencing purposes.  I really do believe, and I think
5  Mr. Bamberg believes, that it's time for Mr. Bamberg to change
6  his life and to go in a different path, because he understands
7  this path leads him to only two destinations, death or prison
8  for life, and he wants neither one.
9    We ask this Court to sentence Mr. Bamberg to the ten
10 year mandatory minimum by law.  We believe that that is
11 sufficient to satisfy the tenets of 18 U.S.C., 3553(a), and we
12 ask this Court to sentence Mr. Bamberg to the mandatory minimum
13 of ten years.  Thank you, your Honor.
14         THE COURT:  Thank you, Mr. Nkrumah.
15         Mr. Bamberg, is there anything you'd like the say
16 before I sentence you?
17         THE DEFENDANT:  Yes, your Honor.  I was going to
18 write a letter, but I ain't gonna read it.  I want to be more
19 sincere and come from my heart because I ain't no angel but I
20 know I did wrong, and I'm willing to take my time and get back
21 to the community and do what I'm supposed to do for society and
22 reconnect with my family.  I already lost an aunt recently, I
23 just got it July 18.  I'm just trying to get back and do what's
24 right for society and leave this alone, your Honor.  I just --
25         MR. NKRUMAH:  Your Honor, there's also one other

11

1   thing I'd like to say on Mr. Bamberg's behalf.  The violence in
2   his record, as I'm sure the Court is aware, occurred when he
3   was a young man, very young, 17, 18.  I think he went to prison
4   for the gun charge at 20.  Usually at that time, your Honor,
5   what happens in the streets, and this Court being fully aware
6   of this, understands that gentlemen like Mr. Bamberg is the one
7   who get to carry the guns, gentlemen like Mr. Bamberg is the
8   one who -- the older drug dealers who know that they'll do much
9   more time than he will, are the ones carrying the guns and
10  doing all the dirt.
11          And, again, Mr. Bamberg, being of no family at that
12  age running with the -- admittedly running with the wrong
13  crowd, didn't have, at that time, 17, 18, 19, 20 years old,
14  didn't have the maturity that the Mr. Bamberg standing in front
15  of you has now.
16          When I read his record, your Honor, and when I first
17  expected to sit down and talk with him, I didn't expect the
18  gentleman that I have sitting next to me.  I have faith in him,
19  and I ask this Court to have that, too.
20          THE COURT:  Thank you.  Was there more you wanted to
21  say, Mr. Bamberg?
22          THE DEFENDANT:  No, your Honor.
23          THE COURT:  Your lawyer has done a good job for you.
24          All right.  I must start with the sentencing
25  guidelines, they're not in dispute.  The base offense level is

1    32, based on at least 280 grams.  The defendant gets three
2    levels off for his timely plea, that takes him to offense level
3    29, his Criminal History Category is IV based on the priors set
4    forth in the presentence report.  His guideline range is 121 to
5    151 months.  There's a ten year mandatory minimum, so we're
6    talking of a mandatory minimum that's only one month below the
7    low end of the guidelines.
8              I next consider the nature and circumstances of the
9    offense.  The offense here is selling crack in not
10   insignificant quantities and it's apparently something the
11   defendant has done for a long time.  And coming from where he
12   comes from and given some of what he saw in his childhood home,
13   he knows more directly than most people the damage that crack
14   does to individuals and communities, so it is a serious
15   offense.  That said, he's not charged with any violence and I
16   didn't even hear Mr. Bauer say that he was a gang member.  So,
17   it is a serious offense, but it's not the worst offense.
18             The history and characteristics of the defendant cut
19   both ways.  He certainly had a childhood of where he was
20   deprived of stability and guidance and love.  It sounds like
21   his mother's addiction took her out of the picture and he spent
22   significant amount of his young childhood in foster care and
23   then, when his father took him out, his father was abusive, and
24   it's probably no surprise that the defendant ended up on the
25   street at a young age committing crimes.

1           The downside of the history and characteristics is
2    that record, starting with a robbery at age 17, resisting
3    arrest at age 18, firearms charge at age 20, menacing charge at
4    age 20, another resisting charge at 26 and a drug misdemeanor
5    at 26.
6           If I wanted to go above the mandatory minimum, that
7    record combined with the lack of employment and what seems
8    pretty obvious to me to have been pretty much a life of crime,
9    would justify it.
10          But I think when I consider the remaining sentencing
11   factors under 3553(a), and I've considered all of them, even
12   the ones that I'm not going to discuss, I don't think I need to
13   go above 120 months.  It is a long time, and I think it
14   sufficiently promotes all the purposes of sentencing and avoids
15   unwarranted disparities.
16          I will tell you, Mr. Bamberg, you know, I hope that
17   you're kind of taking stock as a result of what's happened to
18   you here coming into the federal system, and you really don't
19   have anything to be proud of in your record.  If you had come
20   from the background that you had come from and you had gone to
21   school or you'd gone to work, you'd have something to be proud
22   of.
23          I don't minimize how difficult it must be to be you,
24   and had the parents that you've had and the upheaval that you
25   had and the deprivation that you had.  That couldn't have been

1    easy.  I see in your record a little too much enthusiasm for
2    the life of the streets and you need to get over that.
3              First of all, you're going to be, as your lawyer
4    said, you know, a lot older when you get out and we've all seen
5    how ridiculous those older guys are who are still trying to be
6    on the streets.  More importantly, you will have wasted ten
7    prime years of your life and it would just be a real shame to
8    do it again.  So I hope, as your lawyer said, that while you're
9    locked up you're going to stay in touch with family.  I notice
10   some of them are upstate, maybe the best thing for you to do is
11   to go somewhere away from Yonkers and start fresh and, you
12   know, try something that you haven't tried much of, which is
13   getting a job and not breaking the law.
14             I hope you mean what you've told me today about, you
15   know, wanting to be a regular citizen going forward and do
16   what's right, and I think with some reflection and the maturity
17   that your lawyer says you have gained and that you will gain
18   between now and when you get out, I think you can do it.
19             I'm going to sentence you to 120 months imprisonment
20   and then I'm going to sentence you to five years supervised
21   release.  That means, after you get out, if you get in trouble
22   again they're going the bring you back to see me.  God willing,
23   I am still going to be here and I'm going to be unhappy to say
24   the least.  So I hope that the time on supervised release is
25   not going to be just a threat hanging over your head, although

1  it is that, because if you do get in trouble again, you know,
2  you don't even get a trial, you get a hearing and back you go
3  to jail.  But aside from that, I hope you look at the term of
4  supervised release as something that can actually help you.
5  They can help you with things like getting a job or getting
6  drug treatment or you know getting into some kind of school, if
7  that's what you want to do.
8          So supervised release I hope will not be just
9  punishment and not just a threat, I hope it will be something
10 you find helpful to you in making a go of it.
11         The following mandatory conditions of supervised
12 release are imposed:
13         The defendant shall not commit another federal, state
14 or local crime;
15         The defendant shall not illegally possess a
16 controlled substance;
17         The defendant shall not possess a firearm or
18 destructive device;
19         The defendant shall cooperate in the collection of
20 DNA as directed by the probation officer.
21         I'm going to suspend the mandatory drug testing
22 condition because I'm imposing a special condition requiring
23 drug treatment and testing.
24         I'm imposing the standard conditions of supervision
25 one to 13 along with the following special conditions:

```
 1              The defendant shall participate in a substance abuse
 2   treatment program approved by the United States Probation
 3   Office which program may include testing to determine whether
 4   the defendant has reverted to using drugs or alcohol;
 5              I authorize the release of available drug-treatment
 6   evaluations and reports to the substance abuse treatment
 7   provider as approved by the probation officer, the defendant
 8   will be required to contribute to the cost of services rendered
 9   in an amount determined by the probation officer based on
10   ability to pay or availability of third-party payment;
11              Defendant shall submit his person, residence, place
12   of business, vehicle or any other premises under his control to
13   search on the basis that the probation officer has a reasonable
14   belief that contraband or evidence of a violation of the
15   conditions of release may be found.  The search must be
16   conducted at a reasonable time and in a reasonable manner.
17   Failure to submit to search may be grounds for revocation.  The
18   defendant shall inform any other occupants that the premises
19   may be subject to search pursuant to this condition.
20              The defendant is to reports to the nearest probation
21   office within 72 hours of release from custody.  I recommend he
22   be supervised by the district of his residence.
23              I'm imposing the mandatory $100 special assessment.
24   I am not imposing a fine based on defendant's inability to pay.
25              Was there a forfeiture order in this case?
```

1           MR. BAUER:  Yes, Judge, it was for $5,000.

2           THE COURT:  All right.  I have previously signed and
3  I reiterate that the defendant shall forfeit $5,000 to the
4  United States as proceeds of the offense.

5           Does either lawyer know of any legal reason why the
6  sentence I described should not be imposed as stated?

7           MR. BAUER:  No, Judge.

8           MR. NKRUMAH:  No, your Honor.

9           THE COURT:  All right.  The sentence I described is
10 the sentence that I find sufficient but not greater than
11 necessary to serve the purposes of sentencing and is the
12 sentence I impose.

13          Mr. Bamberg, you have a right to appeal your
14 conviction and sentence except to the extent you've given up
15 that right through your plea of guilty or your plea agreement
16 with the government.  If you wish to appeal and you're unable
17 to pay the cost of an appeal, you can apply for permission the
18 appeal without paying.  Any notice of appeal must be filed
19 within ten days of the judgment of conviction, and your lawyer
20 will assist you with that if that's the route you want to go.

21          So, ten years is a long time, but it's the least I
22 could give you.  As I said, I think if I had given you more,
23 nobody would argue with me about it, but I'm going as low as I
24 can because I have hope that the path that you say you're on
25 now you will stick with and that when you get out you're going

```
 1   to look at the world differently and do things differently.  So
 2   I wish you luck with that.  We are adjourned.
 3              MR. NKRUMAH:  Your Honor, could I just --
 4              THE COURT:  Oh, do I?  I'm sorry.
 5              MR. BAUER:  Three open counts, Count Three, Count
 6   Four and Count Six.  The government would move to dismiss
 7   those.
 8              MR. NKRUMAH:  Join in that motion, your Honor.
 9              THE COURT:  Counts Three, Four and Six are dismissed
10   on the government's motion.
11              MR. NKRUMAH:  And the only thing I would request of
12   this Court, your Honor, I know that this Court cannot order the
13   BOP to place Mr. Bamberg at a facility close to home, but I
14   would ask this Court to recommend that Mr. Bamberg be placed in
15   a facility close to this area, Westchester, New York, so he can
16   continue bonding, reconnecting with his mother's side of the
17   family and hopefully do the same with his father's side.
18              THE COURT:  I will recommend a facility as close to
19   Westchester County as possible.
20              MR. NKRUMAH:  Thank you, your Honor.
21              THE COURT:  All right.  Thank you all.
22              MR. NKRUMAH:  Oh, and we don't know, your Honor, if
23   Mr. Bamberg, based on his prior record, is eligible for the
24   drug program, but if he is, could the Court order it, recommend
25   that he be --
```

```
 1              THE COURT:  I'll recommend drug treatment, if
 2    eligible.
 3              MR. NKRUMAH:  Thank you, your Honor.
 4              (Proceeding concluded at 4:03 p.m.)
 5    CERTIFICATE:   I hereby certify that the foregoing is a true and
      accurate transcript, to the best of my skill and ability, from
 6    my stenographic notes of this proceeding.
                  _____
 7    Angela A. O'Donnell, RPR,Official Court Reporter, USDC, SDNY
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```